## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| GREGORY BRAXTON PELLEY ANDERSON, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT and**<br>**JURY TRIAL DEMAND** |
| LEXISNEXIS RISK SOLUTIONS INC, | |
| Defendant. | |

Gregory Braxton Pelley Anderson ("Plaintiff" or "Mr. Anderson") brings this action on an individual basis, against LexisNexis Risk Solutions Inc. ("Defendant" or "LexisNexis") for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq.*, arising out of Defendant's mixing Plaintiff's consumer file with that of another consumer.

## PARTIES

1.     Gregory Braxton Pelley Anderson ("Plaintiff" or "Mr. Anderson") is a natural person residing in Little Rock, Arizona and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

2.     Defendant LexisNexis Risk Solutions Inc. ("Defendant" or "LexisNexis") is a Georgia corporation with a principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia 30005, and is authorized to do business in the State of Arizona, including within this District. LexisNexis can be served at its registered agent, C T Corporation System, 289 S Culver St, Lawrenceville, GA 30046-4805. LexisNexis is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## FACTUAL ALLEGATIONS

5.     In or around October 2024, Plaintiff and his mother applied for insurance with Community Insurance Professionals Inc. ("Community Insurance")

6.     Unfortunately, their application was denied.

7.     This left Plaintiff continuing with Farm Bureau Insurance, paying an outrageous amount of $599 per month, just for a standard insurance package to cover his Audi Q5.

8.    Plaintiff's mother was approved with Community Insurance on her own.  She pays only between $100 and $150 per month.

9.    Undeterred by the previous denial, Plaintiff submitted again a subsequent, independent application for automobile insurance with Community Insurance in November 2024.

10.    For Community Insurance to make a determination on Plaintiff's insurance application, it would need to obtain copies of his consumer files.

11.    Plaintiff provided Community Insurance with his personal identification information, including his Social Security number, and authorized it to obtain copies of his consumer files.

12.    Prior to receiving a quote, on or about November 4, 2024, Community Insurance provided Plaintiff with a CLUE Loss History Report, which was reported by Defendant.

13.    This report contained materially inaccurate information, specifically attributing two automobile accidents to Plaintiff that, in fact, pertained to his father.

14.    Subsequently, on or about November 7, 2024, Community Insurance issued Plaintiff a quote for a six-month automobile insurance premium of $6,624.

15.    Plaintiff has received similar quotes from Progressive Insurance and other insurers, on account of his LexisNexis report.

16.    Due to the inaccurate information contained in the CLUE Loss History Report provided to Community Insurance by Defendant, Plaintiff experienced significant difficulty obtaining reasonable automobile insurance quotes from other providers.

17.    The Defendant's inaccurate CLUE Loss History Report directly caused a significant inflation of Plaintiff's insurance quotes. Between November 7, 2024, and January 2025, Plaintiff applied to multiple insurance providers, but all quotes received were substantially higher than they otherwise would have been.

18.    On or about November 2024, Plaintiff received a copy of his CLUE Loss History report, which was reported by Defendant.

19.    Upon reviewing the contents of the consumer file, Plaintiff was confused by the appearance of several pieces of insurance claims that did not belong to Plaintiff at all but to his father.

20.    Specifically, Defendant was reporting the following insurance claims which did not belong to Plaintiff:

    a. Date of Loss: 10/23/23

    Driver Name: ANDERSON, GREG (P/H)

Type of claim: PD/C (property damage/Condominium)

Insurance company: PA ALLSTATE PROP & CAS

Amount paid: $1,382

Claim number: 0733427033

At fault

b. Date of Loss: 12/16/22

Driver Name: ANDERSON, GREG (P/H)

Type of claim 1: CP/C (Comprehensive) - $6,868

Type of claim 2: RR/C (Rental Reimbursement) - $300

Insurance company: PA ALLSTATE PROP & CAS

Claim number: 0733427033

Not at fault

21.    Plaintiff was not listed as an insured on the above-mentioned policy, and that his father was the sole policyholder. Plaintiff has no insurance coverage with Allstate.

22.    By reporting the aforementioned insurance claims in the consumer file presumably about Plaintiff, despite the fact that the said insurance claims do not belong to Plaintiff, Defendant failed to follow reasonable procedures to assure the

maximum possible accuracy of the information contained within Plaintiff's consumer files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

23.    Plaintiff did not apply for insurance claims with any of the aforementioned entities and did not have a relationship with any of the aforementioned entities.    Defendant did not have a permissible purpose for furnishing information about Plaintiff to the above-referenced entities on the above-referenced dates.

24.    Upon information and belief, all three of the above-referenced inquiries were initiated by credit applications submitted by an unrelated consumer.

25.    As Plaintiff had not authorized any of the above-referenced entities to request Plaintiff's credit report from Defendant on the above-referenced dates in 2021, nor did Plaintiff enter into any business transaction or relationship which otherwise may have provided a basis for those entities securing a copy of Plaintiff's credit report from Defendant, Defendant disclosed information about Plaintiff to the above-referenced entities without a permissible purpose and in violation of 15 U.S.C. § 1681b(a).

**Plaintiff's January 2025 Dispute to Defendant**

26.     On or about January 5, 2025, Plaintiff filed a dispute with Defendant regarding the inaccurate CLUE Loss History Report. Plaintiff disputed via email, specifically identifying two claims listed in the report that pertained to his father.

27.     Plaintiff attached a copy of the CLUE Loss History Report he received from Community Insurance, clearly marking the two (2) erroneous claims.

28.     Having received no response, on January 12, 2025, Plaintiff followed up with Defendant via email, reiterating his dispute and requesting a status update.

29.     On, January 20, 2025, Plaintiff escalated his efforts by contacting Defendant via telephone to further dispute the inaccurate claims and seek resolution.

30.     Undeterred by the lack of response, on January 27, 2025, Plaintiff again made a subsequent telephone call to Defendant to dispute the inaccurate claims.

31.     Despite these multiple and persistent attempts, Plaintiff's efforts to rectify the inaccurate CLUE Loss History Report were unsuccessful. Defendant failed to respond to any of Plaintiff's communications, leaving the inaccurate information uncorrected.

**Defendant's Unreasonable Dispute Reinvestigation**

32.     Plaintiff never heard back from Defendant regarding his dispute.

33.    Defendant failed to conduct a reasonable investigation of Plaintiff's January 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and failed to delete the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

34.    Thereafter, and upon information and belief, Defendant failed to unmix Plaintiff's consumer file from that of his father and likely Defendant continued to report his father's information to Plaintiff's consumer file.

35.    As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of access to reasonably priced insurance premiums; the loss of potential insurance opportunities; the expenditure of time and money disputing and trying to correct the inaccurate consumer reporting; spending money on inflated premiums; the expenditure of labor and effort disputing and trying to correct the inaccurate consumer reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of insurance application denials and having another consumer's consumer information, mixed into Plaintiff's consumer file.

36.    Defendant is aware that its credit reporting system can and does result in the mixing of consumer credit files, commonly known as the "mixed file" problem. Defendant's matching algorithms and database rules improperly associate

and merge credit information from different individuals, leading to inaccurate credit reports, many times each year. These errors not only misrepresent consumers' financial histories but also expose personal and financial information to unauthorized third parties, creating risks of identity theft, privacy violations, and unjust credit denials. Despite knowledge of these effects, Defendant's algorithms and procedures continue to allow and cause consumers' files to be inappropriately merged, interfering with their ability to access credit, employment, housing, and insurance.

37.    Defendant has long been aware of the mixed file issue, as evidenced by federal enforcement actions and litigation spanning decades, including lawsuits brought by the Federal Trade Commission, state Attorneys General, and many private consumers. Defendant has previously entered into agreements and consent decrees mandating corrective action, and Defendant has been penalized with punitive damages awards in private actions. Yet, mixed files persist.

38.    Due to Defendant's inaccurate reporting, Plaintiff has paid and continues to pay for severely inflated insurance premiums.

39.    To offset these increased expenses, Plaintiff has been compelled to work extra hours with Amazon Flex and DoorDash, impacting his personal time and well-being.

40.    Furthermore, Plaintiff's intended mortgage application, contingent on reduced insurance costs around Christmas, has been significantly delayed due to Defendant's inaccurate reporting.

41.    Plaintiff cannot afford a mortgage while paying $600 per month on insurance.

42.    The resulting financial strain has caused severe emotional distress.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**

43.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

44.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

45.    Defendant's conduct, actions, and inactions were willful, rendering Defendant liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant Trans Union was negligent, entitling Plaintiff to recover under 15 U.S.C.

§ 1681o.

46.     Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation

47.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

48.     Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

49.     Defendant's conduct, actions, and inactions were willful, rendering Defendant liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Trans Union was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

50.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by th FCRA;

iii.  Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,

Dated: May 6, 2025

By: */s/ Misty Oaks Paxton*
Misty Oaks Paxton, Esq., Bar No. 127089
THE OAKS FIRM
3895 Brookgreen Pt.

Decatur, GA 30034
Tel: (404) 500-7861
Email: attyoaks@yahoo.com

*Attorneys for Plaintiff,*
*Gregory Braxton Pelley Anderson*